My name is Yvonne Ernst, and I represent Melvin Twyford. First, I think it's important to focus on what we're talking about here, which are Social Security disability insurance benefits. And the Supreme Court held that individuals have a property right. They pay into Social Security to become insured, to be covered, should they become disabled. And with that comes the right to procedural due process. So we expect that when these cases are reviewed, that the agency will comply with their regulations and their rulings. The agency has stated that they would do so. The Supreme Court has stated they should do so. And so has the Eighth Circuit. So if we look at the ALJ's decision, and we start at, in this case, the ALJ erred at Steps 3, Steps 4, and Steps 5. At Step 3, we had two listed impairments at issue. We had 104, and we have 1204 and 1206. Under 104, if you look at the ALJ's decision, he simply stated there was no evidence of nerve root compression. In my brief, I point out that there indeed was. And so the ALJ didn't go on to make the other findings. Counsel attempts to do so in her brief, but that's another factor all the courts agree on. There can be no post hoc rationalizations. It was for the ALJ to make that finding. The other listings are 1200. And so there we're looking at depression, anxiety disorder, agoraphobia. He had some panic attacks. And so when we look at that, the ALJ simply adopted the findings of a state agency physician who had never examined this claimant. So when we look at what is the ALJ supposed to do when they're deciding how to evaluate a case, and you look at 404.1527, you look at 603-P, Social Security ruling, you look at 96-6P, which specifically talks about a state agency's physician's opinion. And it tells us that the judge is to look at the complete case record, not pick and choose. That we're looking at whether the claimant can sustain performance, not do it once in a while. And here we have doctors treating psychiatrists, Syed and Bayet. We have individuals that are helping him buy his groceries, make appointments that attend doctor's appointments with him. And we have their opinions in the record. And the ALJ simply tries to discard them, saying they're not acceptable medical sources. But indeed, under Social Security's rulings, he is supposed to look at their opinions. They are the people that observe the claimant. They interact with the claimant. They know the claimant. And you'll see that in the listing 12.00. You'll see where it says, I believe it's 12.00D, to make sure you listen to what these individuals say, review what they say when you're making your determination. And you also see that in 603P. So to simply say they're not acceptable medical sources is not acceptable. The judge needed to review what they said. And you do not see that in his decision. He simply gives a little weight. So every doctor that interacted with this claimant, he discarded their opinion. But the one who never saw the claimant and only reviewed the other doctor's records and only reviewed the evidence through 5.00 of 13.00 and really is a decision-maker, not really a physician, is the opinion he adopted. And that's contrary to the Supreme Court's holding. You can't relate hearsay evidence is not substantial evidence. It's contrary to the Eighth Circuit's holdings. And it's contrary to 96-C6P, Social Security ruling, which specifically addresses how we will look at a state agency physician opinion. And 404.1527 talks about, is there an examining relationship? Is there a treating relationship? How long has he known this person? Their doctor's opinion fills the state agency physician on each level. But yet that's the opinion he chose to rely on. I'm going to save the rest of my time for rebuttal. So let me grab my stuff. You may very well. Thank you for your argument. Ms. Thornton-Millard, we'll hear from you. May it please the Court. My name is Angela Thornton-Millard, and I represent the commissioner. Plaintiff has made a number of arguments about what's wrong with the ALJ's decision. But it's important to keep in mind that the standard is whether it's supported by substantial evidence and within that zone of choice. And this case was. With regard to the listings, plaintiff. It's plaintiff's burden at step three. And the Supreme Court has said to meet the listings and cut off review at step three. The claimant has to show he meets every one of the criteria. Same if he wants to show he equaled the listings. He has to have medical findings supporting each one of the listed criteria. And that's just not the case here. It's maybe unclear at best whether he had the root compression that was required. And even if he did, there's evidence he did not have the deficits in range of motion. And he did not have the loss of strength. And at least substantial evidence supports that finding that he did not meet the listing for his cervical spine impairments. With regard to the mental listings, the ALJ went through the analysis, considered the four factors, the daily activities, social functioning, concentration, persistence, and pace, and the episodes of decompensation. He did not just hand over his duties to the state agency reviewer. That's some evidence that supports it, and the state agency physicians are experts. It says that in our policy. But there was also evidence plaintiff was living on his own. Yes, he had a caseworker, but she saw him for an hour a week. It wasn't like she was checking in every day, making sure he took his meds. Not the kind of structured environment that the listings contemplate. He had a pet. He was able to take care of his small home on his own, and these just don't rise to the level of marked limitations that are required to meet the mental listings. Turning to the RFC finding, again, there's substantial evidence that supports plaintiff could perform the range of simple light work. He had significant limitations. He had cervical spinal surgery, and the ALJ took that into account. Plaintiff himself said he had trouble lifting, so the ALJ limited him to no more than 20 pounds occasionally. But there was also evidence from the doctor who performed the surgery that plaintiff was released to perform activities as tolerated. So when you take those things together, evidence as a whole, it's substantial evidence supporting the light work. The ALJ added limitations like no overhead work, no vibration. That, again, are reasonable for someone with a history of cervical spinal surgery. With regard to the mental limitations, plaintiff testified he didn't get along with people, liked to isolate. But then there was also evidence that throughout the record he was cooperative. He had good eye contact. There's no instance that I recall that he got in any sort of altercations with all these various medical providers, even noted to be congenial. Taken together, the ALJ found, yes, he's pretty significantly limited in interacting. He can't interact with the public and can only occasionally interact with supervisors and coworkers. That is supported when you look at the record as a whole. With regard to the simple work, plaintiff testified, I believe, to memory problems, concentration problems. And the ALJ gave that some credence in finding he could just perform this very simple work, few work changes, repetitive type work. But that is also consistent with his treating psychiatrists repeatedly indicating his attention was fair to good. And additionally, it's consistent with the state agency opinion, and it's also consistent with his ability to pay his own bills, live on his own, care for his pet, care for his small home. Taken together, it's substantial evidence to support that RFC. Plaintiff, in the brief, also attacks the vocational expert's testimony and says it conflicts with the Dictionary of Occupational Titles. But with regard to the overhead reaching, she specifically addressed that and said that was based on her experience, which this court has said that is perfectly fine and acceptable. The ALJ can rely on that. With regard to the moving mechanical parts in isolated environments, when you pull up the definition in the DOT and its companion publication, the SCO, they specifically say for all these jobs, there's no moving mechanical parts. And additionally, they indicate these are not jobs where you're interacting a whole lot with other people, so there's no conflict between the vocational expert's testimony and the ALJ's finding, and that plaintiff could perform these jobs. Therefore, the ALJ was entitled to rely on that vocational expert's testimony. Plaintiff was able to perform a significant number of jobs in the national economy, and therefore, he was not disabled under the Social Security Act. I want to kind of wrap around back to the NERVRT compression comments, mainly because the scientific evidence there is sort of somewhat puzzling for me. I mean, it strikes me that once there's the diagnosis of a neuroforaminal stenosis with attendant myelopathy, that when that happens, and it results ultimately in a laminectomy, that there's got to be some NERVRT compression. I mean, because of the way that the symptoms and the causation are tied together. Does it matter if that's true, or do we just go right from that point? We say, well, it's still not listed, so we still have to look at what is the sort of impact on the ability for you to function? Anatomically, like range of motion, strength, those sorts of things. Right. The ALJ thought the evidence showed that there wasn't the NERVRT compression. That, at best, is unclear in the record, and it is plaintiff's burden, and there's definitely evidence that his range of motion was fine, his strength was fine, and when it wasn't, there was statements that that was due to his failure to put forth full effort. Remanding the case to discuss those additional factors in this case doesn't seem like it's necessary, because it's pretty clear he doesn't meet those other criteria for that listing, even if you think there's a question on the NERVRT compression. Well, I'm just mostly puzzled by it. I'd like a real explanation as to what happened and why, if there was no NERVRT compression, but I guess that's, and like I said, in my question, it's kind of inherent. I still say, well, if you come back down, does it matter? Because, again, lots of sort of physical difficulties, but if there's not a functional impairment at some point, it doesn't matter from a disability analysis, right? Right. With the listings, you have to have the diagnosis and the functional limitations, because diagnoses affect different people differently, and it is a very stringent standard to meet all those criteria. And in this case, the decision wouldn't change because he didn't have the functional criteria. In conclusion, substantial evidence supports the decision, the ALJ's decision. Plaintiff didn't meet a listing. He could have performed light, very simple work, and the VE's testimony was not in conflict. The ALJ properly relied on it, and we would ask that you would affirm the ALJ's decision. Thank you. Very well. Thanks for your argument. Ms. Ernst, and we'll hear from you in rebuttal. Initially, Your Honors, I would like to point out that a claimant does not have to meet each of the criteria of a listed impairment. You can meet an impairment or you can equal an impairment. The ALJ, look at his decision. He simply said no nerve root compression. There was no analysis. Counsel can't make the findings form. I addressed those findings, but she states that it was his burden. He was unrepresented. Throughout every regulation and ruling in Social Security, the Social Security Administration says we will develop your record. In this case, the very listing said get his surgery report, and the ALJ requested the records, and he requested the records after the surgery report. He knew the surgery was in September 13. The listings have stated that's crucial evidence. We need that evidence, and he chose not to get it for this unrepresented claimant. He could have even asked the claimant to get it. But they had records from the follow-up appointment, didn't they? Well, it doesn't appear so. The follow-up appointment after the surgery, there's one report. It's a Dr. Jeffries. It does not appear that he was even the surgeon because if you look at transcript 684, it says that a Dr. Koons was supposed to perform the surgery. It also says that he was told once this damage, this severe damage, he was a laborer all his life. He paid into Social Security. He was a laborer all his life. He worked with his mental impairments until this pain became too much, and you'll see that in the records. And you'll see him consistently talk about how he can't use his hands, how it feels like he has gloves on. So there are functional limitations. They were observed. When he went in to see Dr. Gray and Dr. Adams, they noted he could not use his hands. And then on the range of motion, I just wanted to point out a couple things. That Dr. Jeffries, remember, he said essentially normal. He didn't say normal. And he also acknowledged he still had pain, and that's what he was told. You're still going to have pain. Also, if you look at 367, it talks about the range of motion in his neck. It was severely reduced, far below normal. Did I answer your question? Well, I think so. It just seemed to me that the results of the surgery were known, and that's what's important. Well, but the results of the surgery weren't known because we don't have the surgery report. Well, but the surgeon, if the surgical report's essentially normal, the way that orthopedic surgeons operate, I mean, they'll send this guy back to his regular treating physician who can make, you know, that physician's ordinarily competent to make these observations, and we have that report, right? No, we don't. We have very few reports. They weren't requested. We have some pain management reports before the surgery. We have one report after the surgery from a doctor who we don't even know who this doctor is, and he says activity as tolerated. Now, what does that mean? If he said do anything you want, he has no limitations, he would have said that. Activity as tolerated, this doctor. Well, he, as the records show, and again, we have to look at the complete case record, he didn't have the function. They observed him. Why would all these treating and examining physicians not tell the truth? And I just want to touch on GAP scores. That's another thing that was inconsistent with that state agency physician. Remember, 96-6P covers that. But that's their opinion, you know. That's what they decided. They said he has serious limitations. He's not in touch with reality, and he has hallucinations. Their document, we're talking about eight hours a day, five days a week, missing no more than one day of work per month. He had to have people accompany him to go to doctor's appointments. He lived in a very small trailer. He did not take care of his dog. Please look at the adult function reports. They're misrepresented. Very well. Thank you for your argument. The case is submitted. Court will file an opinion in due course.